IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

FLEMING GEORGE EDWARD THOMPSON                                    PLAINTIFF

V.                                    CIVIL NO. 2:14-cv-02213-MEF

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Fleming George Edward Thompson, brings this action pursuant to 42 U.S.C. §

405(g), seeking judicial review of a decision of the Commissioner of the Social Security

Administration (Commissioner) denying his claim for supplemental security income (SSI) under the

provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must

determine whether there is substantial evidence in the administrative record to support the

Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I. Procedural Background**

Plaintiff protectively filed an application for SSI on May 4, 2012[1], alleging disability since

January 5, 2010, due to "degenerative spinal disorder; depression." (T. 137-143, 186-188, 190) His

application was denied initially on August 1, 2012 and upon reconsideration on November 6, 2012.

(T. 79-82, 88-89) Plaintiff requested an administrative hearing (T. 90-92), and the hearing was held

on May 1, 2013, before the Hon. Ronald L. Burton, Administrative Law Judge (ALJ). (T. 40-75)

Plaintiff was present and represented by her attorney, M. Abbie Rice. (T. 40, 42)

---

[1] Plaintiff filed an earlier application for SSI in June 2010, which application was denied
at the initial review. (T. 42, 132-136) The prior denial of that application is administratively final
and not at issue in this case. The ALJ did not explicitly or constructively reopen that application
when considering Plaintiff's application filed May 4, 2012. (T. 27-34)

Plaintiff was 56 years old at the time of the hearing. (T. 43) He obtained a high school education through a GED program completed in 1986. (T. 43, 161) He had past relevant work ("PRW") as a security guard from November 2006 to April 2009 and as a commercial cleaner from May 2009 to May 2010. (T. 46-47, 147-149, 168, 204) Plaintiff stopped working on January 5, 2010. (T. 190)

By a written Decision dated July 3, 2013, the ALJ found Plaintiff had the following severe impairment: musculoskeletal disorder (back disorder). (T. 29) After reviewing all of the evidence presented, the ALJ determined Plaintiff's impairment did not meet or equal the level of severity of any impairment in the Listing of Impairments. (T. 29-30) The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work, except as follows:

> "The claimant is able to frequently lift and/or carry ten pounds and occasionally twenty pounds, sit for a total of six hours in an eight hour workday, and stand and/or walk for a total of six hours in an eight hour workday. The claimant is able to perform semi-skilled work involving simple tasks, few work changes, and limited use of judgment." (T. 30)

The ALJ noted that Plaintiff performed the work of a security guard for a sufficient time to learn the tasks of the job and earned income qualifying the work as substantial gainful activity; and, in comparing Plaintiff's RFC with the physical and mental demands of such work, the ALJ determined that Plaintiff could perform his PRW as a security guard as such work is actually and generally performed. (T. 33) The ALJ then found Plaintiff had not been under a disability as defined by the Act during the relevant time period. (T. 33)

Plaintiff requested a review of the hearing decision by the Appeals Council (T. 20-22), which request was denied on August 27, 2014 (T. 1-3). Plaintiff then filed this action on October 6, 2014.

(Doc. 1) This case is before the undersigned pursuant to the consent of the parties. (Doc. 5) Both

parties have filed appeal briefs (Docs. 8, 9), and the case is ready for decision.

## II.  Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's

findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than

a preponderance but it is enough that a reasonable mind would find it adequate to support the

Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must

affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v.*

*Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that

supports the Commissioner's decision, the court may not reverse it simply because substantial

evidence exists in the record that would have supported a contrary outcome, or because the court

would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other

words, if after reviewing the record it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the findings of the ALJ, the Court must affirm the

ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by

establishing a physical or mental disability that has lasted at least one year and that prevents him

from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th

Cir. 2001); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Act defines "physical or mental impairment"

as "an impairment that results from anatomical, physiological, or psychological abnormalities which

are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.

§ 1382c(a)(3)(D). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 416.920(a)(4)(v).

## III. Discussion

Plaintiff argues four points on appeal: (1) that the ALJ erred at step two by not including finding additional severe impairments; (2) that the ALJ failed to fully and fairly develop the record; (3) that the ALJ's RFC assessment is not supported by substantial evidence; and, (4) that the ALJ's determination that Plaintiff is not disabled is not supported by substantial evidence. (Doc. 8, pp. 15-20)

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

### A.  Step Two Analysis

At step two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4); *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001). An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 416.920(c), 416.921; *Bowen v. Yuckert*, 482 U.S. 137 (1987)(O'Connor, J., concurring). If the impairment would have no more than a minimal effect on a claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that an impairment or combination of impairments are severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). Severity is not an onerous requirement for the claimant to meet, *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989), but it is also not a toothless standard, and courts have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. *See, e.g., Page v. Astrue*, 484 F.3d at 1043-44; *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *Simmons*, 264 F.3d at 755; *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); *Nguyen v. Chater,* 75 F.3d 429, 431 (8th Cir. 1996). A mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. *Buckner v. Astrue*, 646 F.3d 549, 556-57 (8th Cir. 2011).

A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence

consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. 20 C.F.R. §§ 416.908, 416.927.

Plaintiff urges that the ALJ should have also determined that several other conditions were severe impairments, including both of his lower extremities, both of his shoulders, and his neck. (Doc. 8, p. 15) The argument lacks evidentiary support. The record does not establish that the injuries to Plaintiff's feet, shoulders, and neck resulted in severe functional impairments.

### 1. Left Lower Extremity

To begin, the injury to Plaintiff's lower left extremity, an avulsion fracture between his talus and fibula, occurred in October 1989 (T. 549, 555), which was over 21 years before his alleged onset of disability on January 5, 2010. The ALJ mentioned the injury, noting in his Decision that Plaintiff's physician at the time, Tom Phillip Coker, M.D., released Plaintiff to return to work on February 15, 1990, and that Dr. Coker concluded that Plaintiff had no permanent partial physical impairment as a result of the injury and "could seek employment at any type of activity." (T. 561-562) The ALJ further noted that Plaintiff then began work loading river barges. (T. 31) *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (claimant was able to work for years with the same impairments she now claimed were disabling). Additionally, a consultative examination performed during the relevant period did not reveal any significant physical limitations to Plaintiff's left lower extremity. Substantial evidence of record supports the ALJ's finding that any impairment resulting from the remote injury to Plaintiff's left lower extremity was not severe.

### 2. Right Lower Extremity

Regarding his right lower extremity, Plaintiff suffered a calcaneus fracture in September 1995 when he slipped due to rain and his right heel was caught between two barges. (T. 499) Plaintiff was

treated for this injury through 1999, and on June 16, 1999 his treating physician, Stephen Heim, M.D., an orthopaedist, reported that Plaintiff had reached maximum medical improvement, and that his options included ". . . basically living with this, altering his activity, using his analgesics, anti-inflammatories, arch supports, and continuing with some modicum of pain, versus a subtalar fusion which would not increase his motion." (T. 464) On November 10, 1999, Dr. Heim opined that "[h]is calcaneus fracture is going to cause him some subtalar arthritis and some difficulty in the future," "[t]his is a rather difficult injury to that extremity," and taking that into account, plus the leg length inequality, Dr. Heim rated permanent physical impairment at 28% to the foot, 20% to the lower extremity, and 8% to the body as a whole. (T. 472) Nonetheless, Plaintiff successfully returned to work after this injury, and the ALJ noted that he worked as a security guard and a janitor from November 2006 through January 2010 at the substantial gainful activity level. (T. 31, 148-149, 168) Notably, Plaintiff did not list this impairment in his application for SSI benefits. (T. 190) *See Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir. 1993) (claimant did not allege disabling impairment in his application); *Dunahoo v. Apfel*, 241 F. 3d 1033, 1039 (8th Cir. 2001) (fact that claimant did not allege the impairment in her application for disability benefits is significant, even if the evidence of the impairment was later developed). A consultative examination during the relevant period also revealed no significant physical limitations to Plaintiff's right lower extremity. (T. 398-400)

The medical evidence shows that after Plaintiff's release from care for this injury in 1999 he did not complain of right ankle pain and seek treatment for it again until *after* the ALJ's Decision on July 3, 2013, and even then, his x-ray findings were largely unremarkable and he was noted to be taking only over-the-counter ibuprofen. (T. 578-581, 584) On June 26, 2014, nearly a year after the ALJ's Decision, Plaintiff was sent by his counsel to see James Buie, M.D. "to get a disability

exam." (T. 9) *See Page v. Astrue*, 484 F.3d 1040, 1043-44 (8th Cir. 2007) (encounters with doctors were "linked primarily to obtain benefits, rather than to obtain medical treatment"); *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995). Upon examination, Dr. Buie reported "[t]he patient at this point has some early changes involving his feet and has a little bit of pes planus on the left," but "[f]rankly, both of these could be problems but neither one of these are disabling." (T. 10)

Substantial evidence of record supports the ALJ's finding that any residual effects from this remote injury to Plaintiff's right lower extremity did not significantly limit Plaintiff's ability to perform work-related activities.

### 3.  Left Shoulder

Plaintiff first complained of left shoulder pain after vacuuming stairs at work in January 2010. (T. 313) He was initially diagnosed with rotator cuff tendonitis and was started on a short course of oral steroids and medication for pain. (T. 315) Plaintiff later gave a different history of the injury, reporting that he injured his left shoulder while moving furniture at work. (T. 369) He was sent to physical therapy "which he participated in to some extent." (T. 365) An MRI/arthrogram of Plaintiff's left shoulder performed on March 3, 2010 showed a probable partial thickness inferior surface tear of the supraspinatus at its insertion, some fluid in the subdeltoid bursa which may reflect bursitis, mild acromioclavicular arthrosis, with no obvious glenoid labral tear. (T. 284) On March 29, 2010, Plaintiff's doctor noted good range of motion of the left shoulder, that the MRI/arthrogram "was essentially normal," and his impression was "[l]eft shoulder pain, resolved." (T. 333) The consultative examiner who saw Plaintiff during the relevant period found Plaintiff's range of motion of the left shoulder to be within normal limits, and no significant physical limitations were found.

(T. 398-400) The medical evidence of record simply does not support Plaintiff's contention that the impairment to his left shoulder is severe.

### 4.  Right Shoulder

After injuring his left shoulder at work in January 2010, Plaintiff reported an injury to his right shoulder when he lifted a large bag of trash out of a bin at work. (T. 346) He advised that his pain was moderate, and the degree of swelling was noted to be minimal. (T. 345) X-ray of his shoulder was within normal limits, with normal alignment, no fracture, and normal soft tissue. (T. 347, 349) Plaintiff was diagnosed as having a shoulder sprain and Ultram was prescribed for pain. (T. 347-348) An orthopaedic evaluation on January 26, 2010 revealed full range of motion of the right shoulder and "almost superficial tenderness in the right trapezial area and right rhomboid area." (T. 373) On March 8, 2010, Plaintiff admitted "his right shoulder is fine now" (T. 357), and on March 29, 2010, Plaintiff did not have any complaints specific to his right shoulder (T. 333). The consultative examiner who saw Plaintiff during the relevant period found Plaintiff's range of motion of the right shoulder to be within normal limits, and no significant physical limitations were found. (T. 398-400) The medical evidence of record does not support Plaintiff's argument that his right shoulder sprain, suffered two years before the relevant period, resulted in a severe impairment.

### 5.  Neck and Cervical Spine

While being treated for his left shoulder injury in January 2010, Plaintiff complained of pain in his neck and down his left arm into his hand, with numbness in his 4th and 5th fingers. (T. 313) In describing the injury to his right shoulder, Plaintiff said he "felt something pull" up into his neck. (T. 347) His examination on January 21, 2010 showed moderate tenderness in his right shoulder and on the right side of his neck, but his back exam was normal. (T. 346-347) Cervical spine x-rays

showed degenerative disc disease at the C3-C4 level with anterior osteophytic changes, but no compression fractures or spondylolisthesis were seen. (T. 348) On March 29, 2010, Plaintiff's orthopaedist suggested a c-spine work-up (T. 334), and on April 9, 2010 an MRI of Plaintiff's cervical spine was done. It showed degenerative changes of the cervical spine, including some mild spinal canal stenosis, some mild neural foraminal stenosis (moderate at C3-C4 and at C5-C6 on the left), osteophyte formation, a left paracentral disc bulge at C5-C6, right paracentral disc bulge at C6-C7, and a small right paracentral disc herniation at T2-T3 (T. 343-344). Plaintiff was seen by Christopher G. Covington, M.D., an orthopaedist, on April 22, 2010 for evaluation of neck and left upper extremity pain. Upon examination, Plaintiff had no tenderness of the cervical spine, but he had decreased range of motion with bilateral rotation, decreased grip strength in the left hand, and weakness of the extensor group of the left upper extremity; the right upper extremity and lower extremities bilaterally were normal. Dr. Covington's impression was cervical spondylosis, cervical stenosis, and cervical herniated nucleus pulposus. (T. 521) Plaintiff was released by the workers' compensation physician, D. Allen Lukasek, D.O., to follow-up with his primary care physician for treatment of his current condition. (T. 519)

In a visit with Rodney McDonald, M.D. on April 26, 2010, Plaintiff reported neck pain and stiffness, but no musculoskeletal examination was performed. (T. 304-305) In a return visit to Dr. McDonald on May 17, 2010, Plaintiff advised that he had been off work for five months on workers' compensation; he was released by the workers' comp doctor on May 4; and, "[h]e now needs a release to return to work." (T. 308) It is documented that "[h]e is doing well," but that "[p]atient is trying to get on disability." (T. 308) Physical findings on exam were normal. (T. 310) Dr. McDonald advised Plaintiff that his clinic did not do disability evaluations, and did not do chronic narcotic

management, but that they could try non-narcotic treatment of his pain including measures like physical therapy. Plaintiff was to notify Dr. McDonald if he desired a trial of non-narcotic management of his neck symptoms. (T. 310) On May 18, 2010, Dr. McDonald issued two return to work slips for Plaintiff: in one slip he confirmed seeing Plaintiff on April 26, 2010, and he stated, "[h]e was not taken off work and was clear to return to work without restriction 4/27/10;" and, in the other slip, he confirmed seeing Plaintiff on May 17, 2010, and he stated, "[h]e was not taken off work by me & he is ok to return to work without restriction 5/18/10." (T. 338-339)

The record does not show any more complaints of neck pain until January 9 and May 13, 2013 (T. 573, 576), but during a subsequent appointment on May 23, 2013, a physical examination of Plaintiff's neck was noted to be normal (T. 577). Further, during the consultative examination performed by Chester L. Carlson, D.O. on June 4, 2012, Plaintiff was found to have a normal range of motion in all of his joints, including his cervical spine; no muscle spasm was noted; neurological findings were normal; no sensory abnormalities were noted; normal gait and coordination were seen; and, Plaintiff was documented to have normal hand and finger functions including 100% grip strength. (T. 398-399) Dr. Carlson reported "[n]o significant physical limitations found on exam." (T. 400)

The ALJ's determination that Plaintiff's neck and cervical pain does not constitute a severe impairment is supported by substantial medical evidence.

**B. Development of the Record**

Plaintiff asserts that the ALJ erred by failing to fully and fairly develop the record in this case. More specifically, he argues that the ALJ should have ordered an orthopaedic examination

given the evidence of Plaintiff's feet and ankle problems, "especially since the General Physical Examiner didn't even evaluate Mr. Thompson's feet." (Doc. 8, p. 16) The Court disagrees.

The ALJ has a duty to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). However, the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994). While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted). Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial. *Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001). A claimant must show that the ALJ's further development of the record would have made a difference in his case or could have changed the outcome. *Onstead v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

The record in this case, nearly 600 pages in length, contained sufficient medical evidence from which the ALJ could make an informed decision regarding Plaintiff's claimed disability. Regarding Plaintiff's left lower extremity, and as discussed in Section A(1) above, the ALJ noted that Plaintiff's physician, Dr. Coker, released Plaintiff to return to work on February 15, 1990, and that Dr. Coker concluded Plaintiff had no permanent partial physical impairment as a result of the injury and "could seek employment at any type of activity." (T. 31, 561-562) Regarding Plaintiff's lower right extremity, and as discussed in Section A(2) above, the medical evidence shows that after

Plaintiff's release from care for this injury in 1999 he did not complain of right ankle pain and seek treatment for it again until *after* the ALJ's Decision on July 3, 2013, and even then, his x-ray findings were largely unremarkable and he was noted to be taking only over-the-counter ibuprofen. (T. 578-581, 584)

Plaintiff asserts that Dr. Carlson, who performed a physical consultative examination on June 4, 2012, did not even evaluation his feet. The record shows otherwise. Dr. Carlson's report lists those impairments that Plaintiff advised him of, including neck pain, lower back problems, depression, and coronary artery disease (T. 396), but no history was given for problems with Plaintiff's feet. This is consistent with Plaintiff's failure to complain of right ankle pain again until *after* the ALJ's Decision. Further, Dr. Carlson's report evidences that he did conduct an examination of Plaintiff's extremities, including both knees and ankles, tested Plaintiff for gait and coordination, and tested Plaintiff for limb function. These tests all revealed normal results, with the exception that Plaintiff could not walk on heel and toes very well. (T. 399) Upon such examination and testing, Dr. Carlson concluded that Plaintiff had no significant physical limitations. (T. 400) This examination and report, along with the other medical evidence of record, provided the ALJ with sufficient medical evidence to determine whether the claimant is disabled, and the ALJ was not obligated to obtain an additional orthopaedic examination.

The Court also finds no showing by Plaintiff that the ALJ's alleged failure to fully and fairly develop the record resulted in any prejudice or unfair treatment. Plaintiff was sent by his counsel to see an orthopaedic specialist, Dr. James Buie, on June 26, 2014 to get a disability exam. (T. 9) Upon examination, Dr. Buie concluded that Plaintiff had "some early changes involving his feet and has

a little bit of a pes planus[2] on the left," and while "both of these could be problems," "*neither one*

*of these are disabling*." (T. 10) (Emphasis added.)

### C. RFC Determination

Plaintiff next argues that the ALJ's RFC assessment is not supported by substantial evidence

on the record as a whole. (Doc. 8, pp. 17-20)

RFC is the most a person can do despite that person's limitations, and is assessed using all

relevant evidence in the record. 20 C.F.R. § 416.945(a)(1). This includes medical records,

observations of treating physicians and others, and the claimant's own descriptions of limitations.

*Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms

such as pain are also factored into the assessment. 20 C.F.R. § 416.945(a)(3). A claimant's RFC is

a medical question, therefore, an ALJ's determination concerning a claimant's RFC must be

supported by some medical evidence that addresses the claimant's ability to function in the

workplace. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). The ALJ is required to specifically set

forth a claimant's limitations and to determine how those limitations affect his RFC. *Lewis v.*

*Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).

Plaintiff points to a non-examining consultative physician, David L. Hicks, M.D., who on

August 2, 2010 opined that "RFC is medium with only occasional overhead reaching." This opinion,

however, was rendered in connection with Plaintiff's first application for SSI on June 11, 2010, and

was given nearly two years before the relevant period beginning May 4, 2012 with the filing of

Plaintiff's current SSI application. *See* 20 C.F.R. § 416.335; *Cruse v. Bowen*, 867 F.2d 1183, 1185

---

[2] "Flat feet." www.mayoclinic.org/diseases-conditions/flatfeet/basics/definition/con-20023429 (last accessed November 20, 2015).

(8th Cir. 1989). Thus, medical evidence dated years before the relevant period is of limited relevance to Plaintiff's claim and cannot serve as the basis for Plaintiff's entitlement to SSI benefits. *See Kennedy v. Astrue*, 2008 WL 4756392 (W.D. Ark. Oct. 28, 2008). There is no evidence of ongoing complaints of difficulty reaching overhead by Plaintiff to his treatment providers during the relevant period.

Following Plaintiff's application for SSI benefits on May 4, 2012, Dr. Carlson performed his general physical examination on June 4, 2012 and found "no significant physical limitations." (T. 400) After reviewing Plaintiff's medical history, a non-examining consultative physician, Alice M. Davidson, M.D., completed a Physical Residual Functional Capacity Assessment concluding that Plaintiff could perform medium exertional level work. (T. 403-410) Notably, Dr. Davidson's RFC assessment did not include any overhead reaching limitation. Dr. Davidson's physical RFC opinion was reviewed and affirmed by Charles Friedman, M.D. on November 6, 2012. (T. 441) The ALJ commented on Dr. Davidson's RFC assessment, but in giving Plaintiff's testimony the benefit of the doubt, the ALJ determined that Plaintiff is limited to light work. (T. 32) Substantial medical evidence supports the ALJ's RFC finding without any overhead reaching limitation.

Plaintiff also contends that the ALJ's RFC determination is undermined by evidence that Plaintiff cannot stand and/or walk six hours in an eight hour workday. (Doc. 8, p. 17) Plaintiff again relies on decades old treatment records to support his position. Citing Dr. Coker's opinion letter of March 1, 1990, Plaintiff refers to Dr. Coker's comment that "[i]t would obviously be helpful if he did not spend as much time on his feet," but Plaintiff ignores the rest of Dr. Coker's sentence, "... but I don't think that's imperative." (T. 562) As discussed in Section A above, Plaintiff returned to work at the substantial gainful activity level after being released from treatment of his remote foot

and ankle injuries, and he remained so employed for several years. (T. 31, 148-149, 168) *See Goff, supra.* Plaintiff did not list any impairment resulting from his long past foot/ankle injuries in his application for SSI benefits. (T. 190) *See Smith, supra.*; *Dunahoo, supra.* (fact that claimant did not allege the impairment in her application for disability benefits is significant, even if the evidence of the impairment  was later developed). And, a consultative examination during the relevant period revealed no significant physical limitations. (T. 398-400) Non-examining consultative physicians also opined that Plaintiff could stand and/or walk six hours in an eight hour day. (T. 404, 441)

Finally, Plaintiff argues that he provided objective medical evidence to support his subjective complaints of severe neck pain, difficulty raising his arms, numbness in his upper extremities, and decreased grip. (Doc. 8, p. 20) Contrary to Plaintiff's assertion that he was not able to obtain treatment for his cervical spine after it was determined that the condition was pre-existing and not covered by workers' compensation, Plaintiff was seen and treated for his cervical complaints by Rodney McDonald, M.D. in April and May 2010. Physical findings on exam were normal. (T. 310) On May 18, 2010, Dr. McDonald issued two return to work slips for Plaintiff advising that Plaintiff could return to work without restriction. (T. 338-339) Dr. McDonald offered non-narcotic treatment of Plaintiff's neck pain (T. 310), but the record shows that Plaintiff did not pursue it. No further complaints of neck pain were made by Plaintiff for nearly three years until January and May 2013 (T. 573, 576) and, during an appointment on May 23, 2013, a physical examination of Plaintiff's neck was noted to be normal (T. 577).

The medical evidence of record during the relevant period shows only conservative treatment with ibuprofen and largely unremarkable exams and x-ray findings. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent

with plaintiff's allegations of disabling pain); *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (concluding that, if an impairment can be controlled through treatment or medication, it cannot be considered disabling). The ALJ's RFC assessment reflects that he considered this medical evidence, and he accounted for any abnormal findings in it by limiting Plaintiff to light work rather than medium work. (T. 30) Limiting Plaintiff to light work demonstrates that the ALJ based his RFC determination on the medical evidence of record during the relevant period, and that he credited Plaintiff's subjective allegations of pain to a significant degree. *See Martise v. Astrue*, 641 F.3d 909, 926 (8th Cir. 2011) (the ALJ's RFC assessment represented serious functional restrictions and showed that he credited the alleged limitations to a significant degree).

The ALJ also considered Plaintiff's reported activities of daily living in assessing Plaintiff's RFC. (T. 32) The ALJ noted that Plaintiff reported to a consultative psychological examiner that he needs no assistance with his activities of daily living, gets dressed every day, does some household chores like vacuuming and picking up, washes dishes, and is able to cook meals. (T. 32, 413) Such activities of daily living further support the ALJ's RFC finding. *See Stormo v. Barnhart*, 377 F.3d at 807.

The ALJ considered and discussed the evidence of record as a whole, including treatment records, consultative examinations, state agency reviewing physician opinions, and Plaintiff's reported activities of daily living in reaching his RFC finding, and the ALJ properly accounted for any limitations supported by the evidence by restricting Plaintiff to light exertional level work. Accordingly, substantial evidence supports the ALJ's RFC finding that Plaintiff can perform light duty exertional level work.

## D.  Substantial Evidence Supports the ALJ's Denial of Benefits

Plaintiff's final point on appeal is that substantial evidence supports that Plaintiff is disabled based upon Medical Vocational Rule 201.06. He argues that he is unable to do the standing and/or walking required for light duty work, that he has no skills that transfer to the sedentary level, and that based on his age, education, and work experience a finding of disabled under the Medical Vocational Rules is appropriate. (Doc. 8, p. 20) The argument is deficient in both evidentiary and legal support.

From an evidentiary standpoint, the Court notes this argument presents little more than a restatement of Plaintiff's disagreement with the ALJ's RFC determination, and it fails for the same reasons discussed above in Section C.

Moreover, the argument lacks legal support because the Medical Vocational Rules, or the Grids, only become relevant at step five of the sequential process, not at step four. *See* 20 C.F.R. § 416.920(a)(4)(iv) ("At the fourth step ... If you can still do your past relevant work, we will find that you are not disabled"); 20 C.F.R. § 416.960(b)(3) (once the ALJ finds that the claimant can perform his past relevant work at step four, the ALJ determines that the claimant is not disabled and does not proceed to step five); *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) ("The grids come into play at step five of the analysis, where the burden shifts to the Commissioner to show that the claimant has the physical residual capacity to perform a significant number of other jobs in the national economy that are consistent with her impairments and vocational factors such as age, education, and work experience"); *Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994) (the grids are inapplicable because they apply only at step five of the evaluation).

Substantial evidence supports the ALJ's assessment that Plaintiff has the RFC to perform his past relevant work as a security guard. (T. 33) Plaintiff has not met his burden at step four of the

-18-

analysis by showing an inability to perform his past relevant work. *See Jones v. Astrue*, 619 F.3d

963, 971 (8th Cir. 2010) (claimant bears the burden of demonstrating an inability to return to past

relevant work). Accordingly, substantial evidence of record supports the ALJ's denial of benefits.

## IV. Conclusion

Having carefully reviewed and considered the entire record, the Court finds that substantial

evidence supports the ALJ's Decision denying Plaintiff SSI benefits. The ALJ's Decision should be,

and it hereby is, affirmed. Plaintiff's Complaint should be dismissed with prejudice.

DATED this 24th day of November, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE